IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM A. GIBSON and
ROSE GIBSON,

                            Plaintiffs,

        v.                                                    1:06-cv-1237-WSD

FORD MOTOR COMPANY,

                            Defendant.

## OPINION AND ORDER

This matter is before the Court pursuant to Plaintiffs' Brief on the Scope of
Discovery [63], Defendant Ford Motor Company's Brief in Compliance with the
Court's 09/18/06 Order [65], and the Court's September 18, 2006 order structuring
the parties' briefing of this discovery dispute [49].[1]

## BACKGROUND

This litigation concerns a vehicle accident involving a 2001 F-350 Super
Duty pickup truck designed and manufactured by the Defendant.  Plaintiff William

---

[1] This scope of discovery issue was first raised during the July 31, 2006,
status conference in the case [29].  At that time the parties were asked to frame the
scope of discovery issue in a joint letter to the Court.  That letter was sent to the
Court on or about August 16, 2006.  The Court set a scope of discovery briefing
schedule at a telephone conference on September 18, 2006 [49].

Gibson was in the vehicle when, during the course of an accident, the pickup truck rolled, crushing the roof of the cab in which Mr. Gibson was seated.  He suffered a disabling personal injury.  Plaintiffs allege Mr. Gibson's injuries were caused by a defect in the design of the cab roof which allowed the roof to crush, which in turn caused Mr. Gibson his injuries.  Defendant denies any design defect in the cab roof, alleging that Mr. Gibson's injuries were sustained as a result of being propelled into the roof of the cab when the pickup truck rolled over.

Defendant manufactures a range of pickup trucks.  In 1999, Defendant introduced a newly designed platform for heavy duty trucks.  This design platform is referred to as the PHN-131.  It is the platform on which Defendant constructs its F-250 through F-550 heavy duty pickup trucks.  From 1997 through 2003, Defendant also manufactured a light duty, full-sized pickup truck designated as the F-150.  This pickup truck is built upon what is referred to as the PHN-96 platform.  The parties agree that these two platforms are different.

In 1999, Defendant purchased the Volvo Car Corporation ("Volvo").  Since 1999, Volvo has operated in Sweden as a separate, foreign subsidiary of Defendant.  The Volvo purchase was made after Defendant designed and began manufacturing heavy duty pickup trucks on the PHN-131 platform.  Volvo does not manufacture

pickup trucks.  It has designed and manufactured one sport utility vehicle, known as the XC-90.  The XC-90 was first released in 2003.

## Discovery Sought by Plaintiffs

Plaintiffs present two issues involving the scope of discovery.  First, they claim they are entitled to discovery of information relating to the roof design and structure of Defendant's F-150 pickup truck.  Plaintiffs assert they are entitled to "compare the knowledge and engineering in the design of the Ford F-150 pickup truck with that of the PHN-131 line."  (Plaintiffs' Brief on the Scope of Discovery at 3) ("Pls.' Brief". )[2]  Plaintiffs argue further that "[i]f for no other reason than alternative design, the F-150 material is discoverable, and will, Plaintiffs submit, be admissible."  Id.  Against this backdrop, Plaintiffs seek discovery of six discrete categories of documents (the sixth of which has two subsets) regarding design and performance of the F-350 roof.  Most of these categories seek information about the F-350 and "other F-series vehicles" and presumably include the F-150 truck.  The categories are:

---

[2]  Neither Plaintiffs' nor Defendant's initial submissions comply with the requirements of L.R. 5.1, including the requirement in 5.1(E) that pages be numbered.  The Court will refer in this Order to the docket entry page numbers assigned to the parties respective briefs by the CM/ECF system.

1.  <u>Finite Element Analysis (FEA) and Computer Aided Engineering
(CAE) materials regarding roof design</u>:

Plaintiffs seek the production of the design and analysis performance

test results and the "bulk data" file used to perform the PHN-131

platform FEA and CAD testing and analysis.  Plaintiffs acknowledge

it could "build a bulk data file for the PHN 131" from information

previously produced by Defendant, but that it is more cost effective

for Plaintiffs' experts to perform Plaintiffs' FEA testing using

Defendant's bulk data.  Plaintiffs seek the bulk data for the "entire

F-series."

2.  <u>Benchmarking:  Joints</u>:

Plaintiffs seek benchmarking studies for all of the F-series roof joints.

3.  <u>Design Personnel</u>:

Plaintiffs seek the identity of Defendant's employees with knowledge

of the "design, strength, the susceptibility to crush, and the testing of

the roof" of PHN-131 vehicles.

4.  <u>Safety and vehicle design/roof strength</u>:

Plaintiffs seek design and testing information for the roof structure[3]

components, and information regarding Defendant's efforts to

"identify, eliminate and/or diminish injuries to drivers in rollovers"

and to identify the persons and documents "connected with these

efforts."

5.  <u>Other similar incidents</u>:

Plaintiffs seek materials relating to claims "collected through

defendant's known channels for lawsuits and claims not involving

lawsuits"[4] for trucks built on the PHN-131 frame, at least up to the

date of the incident.

6.  <u>Facilitation of discovery documents</u>:

Plaintiffs request the document sent to Defendant's employees

instructing them not to destruct certain kinds of documents required to

---

[3]  Plaintiffs do not seek information about the "entire F-series," referring
only to "the roof structure."  The Court interprets this request as one for
information about the F-350 vehicle at issue in this litigation.

[4]  The Court interprets this request as one for information involving all Ford
pickup truck rollover incidents of any kind.

5

be maintained as a result of this litigation, which otherwise would be

permitted to be discarded pursuant to the Defendant's document

retention policy.  Specifically, Plaintiffs want Defendant's

"suspension order," which Plaintiffs claim provides a list of the

material Defendant has "ordered preserved and which documents

would, in the opinion of the defendant, pertain to the case in

question."  Plaintiffs also seek Defendant to produce a log of the

documents Defendant produced in three other rollover cases involving

F-150 and F-250 vehicles.

Plaintiffs also seek information relating to injury causation.  Plaintiffs claim

that in a NHTSA docket proposing "a stronger roof standard," Defendant offered

"one or more rollover tests in support of its diving injury theory."  Plaintiffs appear

to contend that Defendant submitted this test information to support its opposition

to the standard.  Plaintiffs state that a "portion of some of those tests" were

produced by Defendant in this case and they now request "the rest of the [test]

data." (Id. 8.)  The description of what is requested is muddled, but the Court

assumes Plaintiffs want the results and the underlying data for rollover tests on all

F-series pickup trucks conducted in response to the NHTSA docket.

Plaintiffs also seek information regarding a certain dynamic rollover study

of the Volvo XC-90 sport utility vehicle.  Plaintiffs contend that  "these vehicles

are light trucks in the category of SUVs." (Id. at 8).  Plaintiffs seek these test

results "not for [the XC-90] roof-strength, but to rebut Ford's diving injury

theory . . ." (Id.)

**DISCUSSION**

Based on the submissions, the Court concludes there are two issues to be

decided.  First, whether Plaintiffs should be allowed to conduct discovery on the

design of the F-150 and Volvo XC-90 vehicles; and second, whether Plaintiffs are

entitled to the specific discovery described in the six (6) numbered paragraphs discussed in the preceding section.[5]  The Court considers these issues in turn.

A.  <u>F-150 vehicle discovery</u>

The discovery requests regarding the F-150 vehicle presents a fundamental recurring issue in automobile products liability litigation.  Specifically, the issue is whether a plaintiff may conduct discovery of components of vehicles that are different in one or more ways from the vehicle at issue in the litigation.  Defendant contends that in this case the F-150 pickup truck is different in fundamental and material ways, and thus discovery pertaining to them is not relevant to the issues in this case involving the F-350.

Although there is "no black letter rule of law regarding discovery of [other] models in products liability cases . . .discovery of similar, if not identical, models is generally permitted."  <u>Hofer v. Mack Trucks, Inc.</u>, 981 F.2d 377, 381 (8th Cir.

---

[5]  The Court's decision on the issue of discovery regarding the F-150 vehicles will necessary impart whether Defendant is required to produce F-150 information in response to the six categories that request the production of information for the entire F-series.

8

1992)  Courts generally undertake a "fact specific determination of the extent of the similarities and dissimilarities" of claimed similar vehicle models to determine if discovery of a model other than that involved in an accident in litigation should be allowed under Rule 26.  Id. at 381.  "[D]ifferent models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation."  Fine v. Facet Aerospace Prods. Co., 133 F.R.D. 439, 441 (S.D.N.Y. 1990).  The models must share "pertinent characteristics" as they relate to the accident at issue.  Hofer, 981 F.2d at 381.  What is required is a specific factual showing of substantial similarity. Conclusory statements of alleged similarity are not enough. See Piacenti v. Gen. Motors Corp., 173 F.R.D. 221, 225 (N.D. Ill. 1997).

Plaintiffs have made two submissions on the scope of discovery issue before the Court.  In the twenty (20) aggregate pages of their submissions, Plaintiffs do not present any concrete, specific, fact-based comparison to show that the F-150 and Volvo XC-90 vehicles are sufficiently similar to the F-350.  Plaintiffs' submissions contain, at most, general, unspecific and conclusory claims of similarity.  Typical of the generalities offered by the Plaintiffs are:

- The F-150 was required by the government to have a roof more

resistant to crush than was the PHN-131 link, and the

construction was different." (Pls.' Brief at 3.) Plaintiffs do not

provide any facts to support the basis for this statement and the

statement itself supports dissimilarity.[6]

• If information relates to the roof strength or performance of the

roof in a rollover, then it is discoverable." (Id. at 4.) Plaintiffs

fail to provide any information to show the substantial

similarity necessary to establish the relevance of information

about the F-150.[7]

• "Defendants [sic] benchmarking of joints is an important part of

its corporate knowledge which could have been used in the

development of the truck in question. To that end, Plaintiffs

---

[6] Plaintiffs, to the extent they claim this dissimilarity supports the availability of an alternative design, do not present any facts to support that the design and manufacture of the F-150 roof would lead to the discovery of admissible evidence showing that there was an alternative safer design for the F-350 pickup truck -- an issue that could be relevant in this litigation. See Banks v. ICI Americas, 264 Ga. 732 (1994).

[7] Defendant has acknowledged that the F-250 and greater series are all heavy duty pickup trucks, information about them them is relevant and is being produced. The parties do not dispute that the F-150 is the light duty truck manufactured by the Defendant.

requested the benchmarking of joints which defendant has made. . . . These two requests cover the F-350 and the entire F-series." ( Id. at 6.)  Absent from this discussion is any presentation of facts showing a similarity between the roof joints of F-350 and F-150 trucks.

- "Plaintiff [sic] has a right to know the differences and similarities in the engineering of the [F-150 and F-350] roofs. Without delving into the information surrounding the manufacture and design of the F-150 roof, how can Plaintiffs establish the marketable reality or technological feasibility of Ford's providing the same or similar roof on the F-350." (PLS.' Reply [68] at 2-3.)  Plaintiffs do not provide any support for the proposition that the vehicles are similar such that the F-150 design is a reasonable alternative for a heavy duty pickup.

- "[The simple fact that both trucks share a common design such as the 'existence of support pillars and spaces for window openings' and both are part of an 'F' series of trucks made by the same company during the same period, qualifies as

11

discovery which would reasonably lead to admissible evidence."[8]  (Id. at 3.) These broad, superficial comparisons do not provide any meaningful information to evaluate the similarity between the vehicles.

- "[The type of steel or other material used for the roof structure, the welding and assembly process, the development of the design of the structure, parts which are common to the F-series truck, tests of the F-150 roof structures and the engineering analysis of the F-150 roof structure are all relevant to Plaintiffs' allegations of a defective roof design on the F-350."  (Id. at 4.) This statement is unsupported by any showing of similarity between the trucks at issue.

The conclusory generalities upon which Plaintiffs rely simply ignore the substantial similarity requirement of relevance.  Plaintiffs' overly generalized approach is illustrated best by the following:

_____

[8]  If this kind of conclusory assertion were enough, Plaintiffs could argue they are entitled to discovery regarding any vehicle with "support pillars and spaces for window openings," which Plaintiffs could claim, entitles them to discovery regarding every car manufactured by Defendant which has pillars and window openings.

12

"Since the F-150 had a relatively stronger roof structure
as required by NHTSA, an alternative product design was
clearly available at the time the subject F-350 left the
control of the Ford Motor Company.  Therefore, the F-
150 material is discoverable if for no other reason than to
establish "that at the time the F-350 was manufactured an
alternative design would have made the product safer
than the original design and was a marketable reality and
technologically feasible."

(Id. at 5) (citations omitted).  This generalized supposition is what the substantial
similarity standard seeks to avoid.  Allowing discovery based on such unsupported,
conclusory statements would be a fishing expedition justified only by the bald
assertion that the information sought is believed to be relevant, even if that belief
has no factual basis.  Discovery of the F-150 pickup truck is precluded.[9]

_____

[9]  The Court notes that Defendant has provided some information that the
F-150 is dissimilar from the F-350.  Specifically, that the F-150 and F-350 are built
on different platforms (Def's Brief at 2),  do not share common roof structure
components and they are not of the same dimension and are not interchangeable,
(Id.) are in different classes (light v. heavy duty), (Id.), have different cab design
and structure (Def's Brief at 2) and have different gross weights (less than 6,000
lbs vs. greater than 10,000 lbs) (Id. at 6).  While this comparison is not compelling,

B.    <u>Volvo XC-90 discovery</u>

With respect to the Volvo XC-90, Plaintiffs seek discovery of dynamic

rollover study information to rebut a defense expected to be asserted by Defendant:

- "The Volvo tests demonstrate that when the roof does not

    collapse, the loads on the occupants [sic] necks are maintained

    within tolerable ranges, and that under such circumstances, the

    occupant is not seriously injured." (<u>Id.</u> at 8-9.)  Ford has

    alleged the "diving injury" theory which essentially states that

    whether the roof of the truck in question collapsed or not,

    Mr. Gibson would still have sustained the same injuries.  Yet,

    their Volvo tests demonstrate that when the roof does not

    collapse the loads on the occupant's neck are maintained within

    tolerable ranges and that under such circumstances the occupant

    is not seriously injured.  (PLS.' Reply at 5).[10]

_____

it supports that there is insufficient information to show similarity so as to require
the production of the information Plaintiffs request.

   [10]  Plaintiffs also note that the "XC-90 was equipped with other features i.e.
[sic] the rollover protection system that protected the occupants in a rollover/roof
crush accident.  Thus, this evidence will tend to bolster or refute Ford's
claim/theory of 'the diving injury.'"  (Pls.' Reply at 5-6.)  These statements are

If Defendant intends to rely on a defense that Mr. Gibson would have suffered his injury even if the F-350 roof had not crushed, Plaintiffs are entitled to rebut this defense theory.  Based on Plaintiffs' representation that the Volvo dynamic rollover study addresses the dynamics of a body in a rolling vehicle and whether a body dives into a roof causing injury even absent roof collapse, the Court concludes this discovery is relevant.  Although Defendant resists this testing discovery by stating that the Volvo study tested technology different from that in the F-350 truck, Defendant does not appear to dispute that the Volvo tests may be useful in evaluating, generally, the "dive injury" theory.  If Defendant intends to assert a "dive injury" defense and, if it has the Volvo dynamic rollover study material in its possession, custody or control, the material is required to be

_____

seemingly inconsistent with Plaintiffs' statement that they seek only dynamic rollover study discovery to rebut Defendant's injury causation defense.  The statement regarding the rollover protection system on its face evidences the Plaintiffs want information about a system to prevent roof crush in a rollover.  The request is made without any showing of substantial similarity between the F-350 and XC-90 vehicles.  Discovery of these design alternatives is not allowed absent a showing of similarity.  To the extent Plaintiffs contend the Volvo rollover protection system was a reasonable, available and feasible design alternative for the F-350, the request for information about it ignores that the Volvo was introduced two years after the F-350 was marketed.  The facts indicate the rollover system does not meet the criteria set forth under Georgia law that an alternative design be a "marketable reality and technologically feasible" at the time a product was manufactured.  Banks v. ICI Americas, at 674-75.  Thus, it is not allowed.

produced.[11]

Finally, to the extent any research, testing, evaluation, review or analysis of the F-150 or Volvo XC-90 was used or considered by Defendant in the design of the F-350 roof, such information is required to be produced. The Court understands from the parties' submissions that all of the information relating in any way to the subject vehicle roof design and testing has been provided to the Plaintiffs. If not, Defendant should advise the Court immediately.

C. Specific Discovery Requests

The Court has considered the specific discovery requested by the Plaintiffs and responds as follows:

1. Underlying FAE and CAE data

To the extent Defendant has conducted FAE or CAE testing, analysis or design work on the F-350 or other PHN-131 platform pickup trucks, the testing, analysis or design work is required to be produced, as is the data upon which the

---

[11] The Court accepts Defendant's representation that Volvo is an independent foreign subsidiary operated separately from Defendant. Thus, to the extent Volvo dynamic rollover study material is not in Defendant's possession, custody or control, but is resident at Volvo, Plaintiffs were required to seek the material requested from Volvo. Gerling Int'l Ins. Co. v. Comm. of Internal Rev., 839 F.2d 131, 139-40 (3rd Cir. 1988).

testing, analysis and design work was performed.

    2. <u>Benchmarking</u>

   Plaintiffs are entitled to discovery of Defendant's benchmarking studies for roof joints of trucks constructed on the PHN-131 platform.

    3. <u>Design Personnel</u>

   Plaintiffs are entitled to require Defendant to identify Defendant's employees with knowledge of the "design, strength, the susceptibility to crush" of the roof of the vehicles constructed on the PHN-131 platform.

    4. <u>Safety and vehicle design/roof strength</u>

   Plaintiffs are entitled to discovery of design and testing information for the roof structure components and information and Defendant's efforts to "identify, eliminate and/or diminish injuries to drivers in rollovers" and to identify the persons and documents "connected with these efforts" regarding pickup trucks constructed on the PHN-131 platform.

    5. <u>Other similar incidents</u>

   It is well-established in this circuit that "before evidence of prior accidents or occurrences is admitted into evidence, the proponent of such evidence must show that 'conditions substantially similar to the occurrence [at issue in the

litigation] caused the prior accidents."  Heath v. Suzuki Motor Corp., 126 F.3d

1391, 1396 n.12 (11th Cir. 1997) citing Hessen v. Jaguar Cars, Inc., 915 F.2d 641,

649 (11th Cir. 1990); see also Jones & Laughlin Steel Corp. v. Matherne, 348 F.2d

394, 400 (5th Cir. 1965);  Jones v. Otis Elevator Co., 861 F.2d 655, 661 (11th Cir.

1988).

        Plaintiffs have not made a sufficient showing that the information sought

involves vehicles substantially similar to the vehicle at issue in this case or

incidents substantially similar to the incident at issue in this litigation.  In the

absence of a sufficient showing of similarity to establish relevancy, a response to

this other incident discovery is not required.

                    6.  Facilitation of discovery documents

        Plaintiffs request the document sent to Defendant's employees instructing

them not to destruct certain kinds of documents required to be maintained as a

result of this litigation.  Specifically, Plaintiffs want the list of material employees

were required to maintain.  This information is not reasonably calculated to lead to

the discovery of admissible evidence.  The document Plaintiffs request is simply a

description of material employees were instructed not to discard.  In the Court's

experience, these instructions are often, if not always, drafted by counsel, involve

18

their work product, are often overly inclusive, and the documents they list do not necessarily bear a reasonable relationship to the issues in litigation.  This is not a document relating to the Defendant's business.  Rather, the document relates exclusively to this litigation, was apparently created after this dispute arose, and exists for the sole purpose of assuring compliance with discovery that may be required in this litigation.  Not only is the document likely to constitute attorney work-product, but its compelled production could dissuade other businesses from issuing such instructions in the event of litigation.  Instructions like the one that appears to have been issued here insure the availability of information during litigation.  Parties should be encouraged, not discouraged, to issue such directives. Defendants are not required to produce these materials.

Plaintiffs seek the collections and log of the documents Defendant produced in three other rollover cases which involved F-250 and F-150 pickup trucks.  The discovery requests for which these documents were produced are not known and the Court cannot determine what, if any, of the information requested and

produced, is relevant to the issues in this case.  Defendant is not required to produce the collections or a log of what was produced.

Plaintiffs seek information relating to injury causation.  Specifically, Plaintiffs claim that Defendant offered "one or more rollover tests in support of its diving injury theory" in a NHTSA docket which proposed "a stronger roof standard."  Plaintiffs state that a "portion of some of those tests" were produced by Defendant in this case and they now request "the rest of the data."  The Court already has ruled on discovery regarding the F-150 vehicle.  But in addition, the Court is not able to determine what results and what underlying data for which vehicles is sought by the Plaintiffs and, in the absence of a more precise description of the information sought, the Court cannot order the production of the materials sought by Plaintiffs.  If Plaintiffs can precisely articulate what they want, they may request the Court to reconsider this ruling so long as the request for reconsideration is not inconsistent with the Court's rulings in this order.

Based on the forgoing,

**IT IS HEREBY ORDERED** that Defendant produce the information required by this order, in accordance with the scope of discovery set forth by the Court in the order.  The production shall be made on or before January 26, 2007.

**SO ORDERED** this 4th day of January, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE