IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM A. GIBSON and ROSE GIBSON | : |
| Plaintiffs, | : |
| vs. | : Civil Action<br>: File No.: 1:06-CV-01237-WSD |
| FORD MOTOR COMPANY | : |
| Defendant. | : |

**FORD MOTOR COMPANY'S RESPONSE TO**
**PLAINTIFF'S AMENDED MOTION TO COMPEL (DOCUMENT 154)**

**COMES NOW, the Defendant,** FORD MOTOR COMPANY ("Ford"), and hereby tenders unto the Court and all counsel this, its Response to the "Amended Plaintiff's Motion to Compel", filed April 11, 2007.

## I.   SUMMARY OF CASE

Plaintiffs filed this action against Ford Motor Company claiming that the roof structure of the 2001 Ford F-350 Super Duty truck was defective in its design. Since the filing of the Complaint, Ford has endeavored to provide all available documents and items which are properly responsive to their discovery requests, however numerous and imprecise those requests may have been.

Moreover, Ford has endeavored to comply with all scheduling order deadlines ordered by this Court and has done so without reservation. Plaintiffs, on the other hand, have neither complied with the deadlines nor provided what undersigned counsel believe to be a reasonable basis for having failed to do so. In an apparent effort to justify the fact that Plaintiffs have still not fully and properly disclosed their design "expert," they have continued to complain about alleged inadequate discovery responses. Ford hereby offers its response.

## II.   ARGUMENT

### (1) Digital information describing the complete Gibson truck as manufactured.

Plaintiffs continue to allege that Ford is deficient in producing certain Computer Aided Engineering (CAE) material in this case. In particular, they seek the "most closely matched bulk data file for the Gibson truck as built." As Ford has stated on numerous occasions, it has produced all known bulk data file material related to the PHN-131 platform. To be sure, by producing Finite Element Analysis (FEA) computer models themselves, Ford has already produced what the Company has been able to identify as the complete "bulk data file material" for the subject PHN-131 vehicle as Plaintiffs have come to describe that material in this case.

The crux of this issue, however, appears to be that Plaintiffs would like Ford to point out which of the several produced FEA models most closely matches the vehicle at issue in this case. To answer this, Ford will once again address the significance of its Computer Aided Engineering (CAE) using Finite Element Analysis (FEA) in the design and development process.

The vehicle at issue in this action is a 2001 Ford Super Duty F-350 full-sized (heavy duty) pickup truck. Its platform designation within Ford is the PHN-131. This platform includes vehicles with model years between 1999 and 2006. The truck was in pre-production design and development stages beginning in the early to mid 1990's. Sometime prior to April of 1996, the CAE Safety group conducted CAE (Computer Aided Engineering) for the purposes of evaluating the truck's roof crush resistance performance. The particular type of CAE that was performed by the engineering team for this analysis is called Finite Element Analysis (FEA).

Like much of the FEA developed by Ford, the above-referenced computer model was created during the design and development phase of the PHN-131 platform. It likely would have been considered a transient document and would not have been specifically retained because it was not generally representative of an "as built" or Job One production vehicle. In addition, it is important to note that oftentimes this type of FEA does not accurately demonstrate the final geometries

and properties of the subject vehicle which is ultimately sold to the public. Typically there are changes which are made after the model is initially designed which are incorporated before Job One. As such, the actual production vehicles are at least a step ahead, if not beyond, that in the development process as compared to the pre-production FEA computer models. With this in mind, it is very difficult, if not impossible, to determine whether any particular computer aided engineering model (whether it was developed before or after the vehicle is released for production) as compared to another might more closely resemble the final truck.

The Plaintiffs are now asking Ford to identify which of the produced FEA simulations most closely resembles the 2001 production vehicle. The question itself is flawed. By way of analogy, that would be tantamount to Plaintiffs' counsel possessing a red crayon; and in recognizing that Ford possessed both an orange crayon and a purple crayon, asking Ford which of those two was "closer" to red. The question is not relevant to any claim or any defense and has already been answered by Ford – none of the produced computer models represent the "as built" truck. The process of deciding which of the produced models is "closest" to the production vehicle is a subjective question which is likely to be answered

differently by different reasonable engineers. Accordingly, this portion of the Plaintiffs Motion to Compel should be denied.

### (2) Advertising material for Super Duty trucks.

The Court has already essentially sustained an objection by Ford that the scope and magnitude of Plaintiffs request for all advertising materials is simply too broad. Moreover, Ford questions the relevance of marketing material in this product design defect case, especially in this circumstance where the truck at issue was a vehicle provided by Mr. Gibson's employer. Nevertheless, in terms of Plaintiff's request, as a purported "compromise," opposing counsel is asking that the Court compel Ford to produce an exhaustive list of all known advertisements with a "short summary of the content" so that Plaintiffs can select advertisements for production from such a list.

Notwithstanding the questionable relevance to the product liability question(s) at issue in this matter, Ford has already produced representative advertising material to opposing counsel. Such a production is infinitely reasonable, especially given the tenuous relevance of such material. Ford has already satisfied this request through its production in this matter; to ask more would be redundant and therefore overly burdensome.

In addition, the proposed "compromise" suggested by the Plaintiffs is no compromise at all. Plaintiffs' counsel understands that Ford does not generally keep video advertising, nor does it keep an index thereof. To require Ford to compile an index in the face of this and then prepare a "short summary" of the content is hardly efficient and certainly creates more work than the original request. This aspect of the Plaintiffs' Motion to Compel should also be denied.

### (3) Information on the use of roll cages in Ford vehicles.

Plaintiffs claim that Ford should be compelled to produce "its test results and testing protocols relating to the use of roll cages." Ford understands and believes that this request is a by-product of topic no. 67 in Plaintiffs' 30(b)(6) deposition notice. In working through the issues related to topic no. 67, Ford's counsel has for some time understood the request to relate <u>not</u> to the use of equipment used by some test engineers in certain circumstances, but rather, to an advertisement concerning a passenger vehicle or sedan which was both manufactured and offered for sale in Australia (Falcon).

In response, Ford asserts that it has not offered for sale a vehicle which is substantially similar to the Super Duty truck which includes what Plaintiffs' counsel has described as a "roll cage." In terms of a production vehicle which is offered for sale to the public, the Plaintiffs have only identified a passenger sedan

which is offered on another continent. Surely this is not relevant in a case involving a heavy duty pickup truck in Georgia.

Perhaps of equal importance, to the best of undersigned counsel's understanding, Plaintiffs have not pursued this issue (as phrased in the pending Motion to Compel) in the past and as such, they have not sought to meet and confer about it. Moving to Compel the material now is premature if not inappropriate. This portion of the Plaintiffs' Motion to Compel should, therefore, de denied as well.

**(4)** **NHTSA presentation material relating to the roof strength, diving and rollovers.**

Undersigned counsel understood that all such properly responsive material had already been produced. To the extent that such material has been omitted from production, Ford will immediately tender the materials to opposing counsel.

Respectfully submitted this 24th day of April, 2007.

                MCKENNA LONG & ALDRIDGE LLP

                /s/ Michael R. Boorman
                Charles K. Reed, Esq.
                Georgia Bar No. 597597
                Michael R. Boorman, Esq.
                Georgia Bar No. 067798
                Matthew S. Knoop, Esq.
                Georgia Bar No. 140870
                McKenna Long & Aldridge LLP
                303 Peachtree Street, Suite 5300
                Atlanta, Georgia 30308
                Telephone: (404) 527-4000
                Facsimile: (404) 527-4198
                creed@mckennalong.com
                mboorman@mckennalong.com
                mknoop@mckennalong.com

                /s/ Paul F. Malek
                D. Alan Thomas, Esq.
                Paul F. Malek, Esq.
                Jeffery C. Ash, Esq.
                *(admitted pro hac vice)*
                Huie, Fernambucq & Stewart, LLP
                2801 Highway 280 South
                Protective Center, Suite 200
                Birmingham, Alabama 35223
                (205) 251-1193
                (205) 251-1256 (facsimile)
                dat@hfsllp.com
                pfm@hfsllp.com
                cja@hfsllp.com

                Attorneys for Defendant
                Ford Motor Company

## FONT CERTIFICATE

I hereby certify that this pleading was prepared using a font and point selection approved by the Court in Local Rule 5.1C.

/s/ Paul F. Malek
Paul F. Malek

## CERTIFICATE OF SERVICE

This is to certify that on April 24, 2007, I presented the foregoing FORD MOTOR COMPANY'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL to the Clerk of the Court for filing and uploading to the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

> James E. Carter, Esq.
> CARTER & TATE, P.C.
> 2 East Bryan Street, Suite 600
> Savannah, GA 31401
> jcarter@cartertatelaw.com

/s/ Paul F. Malek
Paul F. Malek

HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center, Suite 200
2801 Highway 280 South
Birmingham, AL 35223
Telephone (205) 251-1193
Facsimile (205) 251-1256
pfm@hfsllp.com