IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM A. GIBSON and ROSE
GIBSON

                          Plaintiffs,

          v.                                    1:06-cv-1237-WSD

FORD MOTOR COMPANY

                          Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Ford Motor Company's

("Ford") Motion for Clarification and Motion for Reconsideration [166].

## I.      BACKGROUND

Ford's Motion is the continuation of a discovery dispute that has persisted

during nearly the entirety of this litigation.  At the heart of the dispute lies

Computer Aided Engineering ("CAE") or Finite Element Analysis ("FEA") files

pertinent to the F-350 truck whose design Plaintiffs William and Rose Gibson

("the Gibsons") alleges is negligent.

The Gibsons requested this information from Ford during discovery.  Ford

refused to produce it.  The parties filed briefing on the scope of discovery, and the

Court issued an order on January 4, 2007 ("January 4 Order"), the Court held that any information pertinent to the roof design and structure of the F-350 or PHN-131 trucks was discoverable, including CAE and FAE files, benchmarking data, and vehicle testing data.  Despite the January 4 Order, Ford continued to resist producing design information about the Gibson truck, specifically CAE and FAE files and vehicle testing data.  The Gibsons filed a motion to compel production of these files, along with other materials, which the Court granted on May 14, 2007 ("May 14 Order").

The May 14 Order required Ford to produce, on or before May 28, 2007, certain discovery including "any CAE/FAE or other bulk date files related to PHN-131 or F-350 vehicles as they existed prior to December 31, 2001, including any such information pertaining to the Gibson truck not previously introduced."   The May 14 Order further required Ford to produce "[a]ll drawings or specifications regarding the cab of PHN-131 or F-350 vehicles as they existed prior to December 31, 2001, including drawings or specifications of component parts relevant or necessary to reconstruct the roof and cab of the Gibson truck, and the drawings listed in Section 16 of the Mundo Declaration . . ."

The May 14 Order required Ford to "file with the Court a list of all additional materials produced and explain why these materials were not produced previously . . ." Ford was also required to produce a representative to be deposed on specific topics relevant to these materials prior to June 15, 2007.

Ford did not file with the Court a list of any additional materials produced, nor, apparently, did it produce the materials required by the Order by the May 28, 2007 deadline. Instead, Ford filed the present motion on June 1, 2007, asking the Court to reconsider, or, in the alternative, "clarify," the May 14 Order. Ford raises five topics on which it asks for reconsideration or clarification.[1]

## II.   DISCUSSION

### A.   Law of Reconsideration

Under the Local Rules of this Court, "Motions for reconsideration shall not be filed as a matter of routine practice." Local Rule 7.2E. Such motions should not be filed unless "absolutely necessary . . . ." Id. Reconsideration is only "absolutely necessary" where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a

---

[1] None of these topics truly request clarification or reconsideration. Ford merely reargues its original opposition to Plaintiffs' discovery requests.

clear error of law or fact." <u>Brian v. Murphy</u>, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003).   Motions for reconsideration "may not be used to present the court with argument already heard and dismissed" or "to show the court how it could have done it better." <u>Id.</u> at 1259 (quotations omitted).

Ford's motion also makes several requests for "clarification."  In considering these, the Court must be careful to avoid advisory opinions–that is, opinions on an issue for which no "case or controversy exists." <u>BankWest, Inc. v. Baker</u>, 446 F.3d 1358, 1363 (2006).  The Court strives to avoid opinions that bear "the characteristic of the advisory opinion," that is, an opinion that is "purely advisory when it is made and did not pass through the refining pressure of reality." <u>Castle v. Sangamo Weston, Inc.</u>, 837 F.2d 1550, 1560 (11th Cir. 1988).  Conditional rulings, other than those permitted by the Federal Rules, are generally advisory. <u>See id.</u>

B.     <u>Ford's Motion for Reconsideration or Clarification</u>

1.     <u>*Timeliness*</u>

Plaintiffs argue that Ford's Motion for Reconsideration should be denied as untimely.  Local Rule 7.2E requires that motions for reconsideration be filed "within ten (1) days after entry of the order or judgment."  Local Rule 6.1(A) states:

> For time periods of less than eleven (11) days, the
> response time is first calculated as directed by Fed. R.
> Civ. P. 6(a) and, counting weekends and legal holidays,
> three (3) days for mailing is added to the computed date.
> For example, under Rule 6(a), a ten (10) day response
> period becomes at least fourteen (14) days (longer if a
> legal holiday is included) and the period enlarges to
> seventeen (17) days if service is by mail.

The Court filed its Order on May 14.  According to these rules, the last day a motion for reconsideration could be filed was July 1, 2007.  Ford's motion was thus timely filed.

Plaintiffs also argue that the Court should not entertain Ford's Motion for Reconsideration because Ford did not comply with the May 14 Order it seeks to have reconsidered.  Although the Court believes that the May 14 Order brought finality to these discovery disputes, having been generous in considering various discovery issues raised by Plaintiffs in the past, the Court believes fairness requires it to consider Ford's motion on its merits.

2.      *CAE, FEA, and Bulk Data Information*

Ford first seeks reconsideration of the Court's requirement that Ford produce

all "FAE, CAE, or bulk data files related to PHN-131 or F-350 vehicles as they

existed prior to December 31, 2001, including any such information pertaining to

the Gibson truck not previously introduced." Ford asks that the Court narrow the

required production only to FAE files. Ford asserts that it has submitted "all FEA

roof crush resistance models and more for the PHN-131 platform that have been

discovered after a duly diligent search." Ford apparently requests the Court to

clarify whether its production to date conforms to the May 14 Order.

The May 14 Order requires "all FAE, CAE, or bulk data files related to

PHN-131 or F-350 vehicles . . . ," (emphasis added). Ford's carefully worded

briefing indicates that it has only produced FAE files, not CAE files, and within the

FEA file sub-category, has only produced files that it has deemed relevant to roof

crush. The May 14 Order unambiguously requires Ford to produce all FEA, CAE.

or other bulk data files pertinent to PHN-131 or F-350 trucks. "If Ford possesses

bulk data pertaining to PHN-131 of F-350 vehicles as they existed prior to

December 31, 2001, the January 4 Order [and May 14 Order] required them to

produce it regardless of the purpose for which it was compiled or used. . . ." The

May 14 Order also prohibits Ford from imposing unilateral limits on the required production: "To the extent that Ford has withheld any such data, it has misinterpreted the January 4 Order."

Ford does not offer a proper basis for the Court to reconsider the May 14 Order.  The materials described in the January 4 and May 14 Order are required to be produced.

3.     *Deposition Testimony Regarding Data Files*

Ford next requests that the Court reconsider the portion of the May 14 Order permitting Plaintiffs to depose a Ford representative regarding Ford's production of the bulk data materials required by the May 14 Order.  Ford also "seeks clarification on whether Plaintiffs have waived the right to seek . . . depositions" because Plaintiff "did not request a deposition within the time frame contemplated by the Court's May 14, 2007 Order . . . ."  The May 14 Order required Ford to produce certain materials to Plaintiffs, and then to file with the Court a list of the produced materials and the reason they had not been produced previously.  The May 14 Order also permitted Plaintiffs to test the completeness of Ford's production was complete through deposition.  Ford elected not to produce any

further materials, and it appears that Ford has not filed with the Court the list of materials and reasons required by the May 14 Order.

The Court authorized depositions so Plaintiffs could test the completeness of Ford's production.  Ford appears to admit in its briefing for the present motion that it has withheld materials required to be produced.  A deposition testing the completeness of Ford's production is not useful while Ford admits that its production is not complete.  Under the circumstances, Plaintiffs did not waive their right to test the completeness of Ford's production.[2]

Ford also asks for "clarification" that the portion of the Court's January 4 Order stating that a specific Ford document retention list (the "suspension document") is outside of the scope of discovery also prohibits Plaintiffs from asking about the suspension document during deposition.  The January 4 Order states that the suspension document "sent to Defendant's employees instructing them not to [destroy] certain kinds of documents required to be maintained as a result of this litigation" was not required to be produced because it was likely to be

---

[2] The discovery issues the Court has been asked to address repeatedly must come to an end.  If depositions are to be conducted, the parties must cooperate so that such depositions have been completed by August 15, 2007.  Plaintiffs may elect not to conduct the authorized compliance depositions.

overbroad and to constitute attorney-work product.  The January 4 Order did not

prohibit inquiry into what materials exist or are available for production and which

are not.  Plaintiffs may ask about what materials are available for production, and if

materials are not available, Plaintiffs may ask questions to discover why they are

not available.  Plaintiffs are not, however, permitted to use the deposition as a

surrogate for production of the suspension document, and may not ask questions

pertaining to the specific contents or rationale behind the suspension order.

4.    *Engineering Drawings*

Ford "seeks to clarify the status of its production of engineering drawings to

Plaintiffs' counsel."  Ford does not seek reconsideration of the May 14 Order

regarding engineering drawings, nor does it seek clarification regarding the terms

of the May 14 Order.  In the absence of any challenge to the May 14 Order or to

Ford's production, there is no issue for the Court to address.

5.    *Roll Bars*

Ford opposes the Court's May 14 Order requiring it to produce for

deposition a witness to address "Ford's use or consideration of use of rollbars in

crash performance and rollover stability testing of Ford F-Series or PHN-131

trucks . . ."  Ford specifically argues that Plaintiffs' counsel "did not satisfy their

duty to meet in good faith on this issue . . . ."  Ford raised this argument in its responsive briefing to Plaintiffs' Motion to Compel.  The Court has already considered and discredited this argument.  The deposition is allowed to proceed.

6.    *NHSTA Testing Order*

In the January 4 and May 14 Orders, the Court required Ford to produce the data and results of certain NHSTA tests specified in the May 14 Order.  In its responsive briefing to Plaintiffs' Motion to Compel, Ford represented that it had produced all such materials, and that if any further materials were discovered, they would be produced immediately.  In its briefing in support of the present Motion, however, Ford admits that it possesses but refuses to produce the testing data. Ford states that it "has refrained from producing the data from this testing without a specific non-sharing protective order because Autoliv, the company that owns this data, has insisted that Ford not disclose its proprietary testing data in the absence of such an order."  Ford asks the Court to "clarify" that it need not produce this material in the absence of a non-sharing protective order.  That this issue is raised now borders on bad faith.

On August 21, 2006, the Court entered a stipulated protective order.  Under that order, Ford can designate any document it wishes "subject to protective order"

or "subject to non-sharing protective order."  Upon designation, the documents may be shown, disseminated, or disclosed only to the Court and to Plaintiffs' attorneys or experts.  Ford does not argue that the August 21 protective order is insufficient to protect Autoliv's interest in the testing data.  Autoliv has not requested the Court to limit the required production.  The information is required to be produced.

## III.    CONCLUSION

IT IS HEREBY ORDERED that Ford Motor Company's Motion for Clarification and Motion for Reconsideration [166] is DENIED.

IT IS FURTHER ORDERED that Ford shall complete their production on or before August 6, 2007.  Ford's counsel, shall on or before August 8, 2007, certify to the Court that it has produced all materials required by the January 4 and May 14 Orders.

IT IS FURTHER ORDERED that Plaintiffs shall complete, on or before August 15, 2007, all depositions authorized by the May 14 Order to test the completeness of Ford's production.

**SO ORDERED** this 19th day of July, 2007.

_____

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE